# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

IN RE                                          )
                                               )   **Case No. 05-21587-TLM**
**JAMES SPICKELMIRE and**                      )
**BETTY SPICKELMIRE,**                         )
                                               )   **Chapter 7**
                              Debtors.         )
_____        )
                                               )
**C. BARRY ZIMMERMAN,**                        )
                                               )
                              Plaintiff,        )
                                               )
v.                                             )   **Adv. No. 07-07040-TLM**
                                               )
**WILLIAM JAMES SPICKELMIRE;**                 )
**BETTY J. SPICKELMIRE;**                      )
**JERRY L. ALLEY; BRUCE BATTLES;**             )
**GREGORY J. CENAC; GWEN CENAC;**              )
**TERRY L. FOGELSTROM;**                       )
**RODNEY K. GORTSEMA;**                        )
**MATTHEW STEVEN GREEN;**                      )
**MITCHELL JAMES GREEN;**                      )
**MOLLY KATHRYN GREEN;**                       )
**ARLEY HAENER; IRENE HAENER;**                )
**RICHARD J. HAENER;**                         )
**JOHN L. HAUNTZ;**                            )
**CAROL SUE HAUNTZ;**                          )
**KILLGORE ADVENTURES, LLC;**                  )
**CHARLES ROY LAMM;**                          )
**MELBA JUNE LAMM;**                           )
**ROBERT A. LIEBELT;**                         )
**JEFF MAGER; MARVIN MAXWELL;**                )
**JASON B. MAXWELL;**                          )
**RANCE K. MOORE; ZONA G. MOORE;**             )

MEMORANDUM OF DECISION - 1

SHARON L. NOELL;                          )
REBECCA K. ROBINSON;                      )
MONA LEE SLICHTER;                        )
WILLIAM J. SPENCER;                       )
SHERRI L. SPENCER;                        )
JACOB RAY SPICKELMIRE;                    )
JAMES COLIN SPICKELMIRE;                  )
JENA A. SPICKELMIRE;                      )
JOHN ANTHONY SPICKELMIRE;                 )
JANICE KAY SPICKELMIRE;                   )
JUDY D. SPICKELMIRE;                      )
KIRK C. SPICKELMIRE;                      )
RICHARD M. SPICKELMIRE;                   )
TENA L. SPICKELMIRE;                      )
MICHAEL B. SUHR; ROBERT Y. YANES; )
RAGTOWN BAR CORPORATION;                  )
IDAHO COUNTY; and                         )
EQUITABLE FINANCIAL SERVICES;             )
                                          )
                        **Defendants.**       )
_____ )

## MEMORANDUM OF DECISION[1]
_____

## INTRODUCTION

        This matter is before the Court for decision after trial held June 22, 2010.

Upon the evidence presented and the legal arguments made, the Court finds that

the Plaintiff, chapter 7 trustee C. Barry Zimmerman ("Trustee"), has failed to

sustain his burden of proof and persuasion, and judgment will therefore be entered

for the sole appearing Defendant, Melba June Lamm ("Defendant").

_____

        [1]  This Decision constitutes the Court's findings of fact and conclusions of law under
Fed. R. Bankr. P. 7052.

MEMORANDUM OF DECISION - 2

### PROCEDURAL AND FACTUAL BACKGROUND[2]

On October 3, 2005, W. James Spickelmire and Betty J. Spickelmire ("Debtors") filed a joint voluntary chapter 7 petition commencing Case No. 05-21587-TLM.  Doc. No. 1.  Debtors' schedule A listed a residence in Grangeville, Idaho, that is not at issue in this litigation.  They disclosed no other real estate.  *Id.* at 4.  They listed on schedule B their ownership of 10,000 shares of stock in "Western Land Company, now Ragtown Bar Corporation."  *Id.* at 5.  Debtors asserted the value of this personal property holding was $150,000.00.  *Id.*

On Debtors' schedule D, there are three secured creditors listed.  One is secured by a vehicle, and another by real property worth $65,000.00 (which would appear to be the residence), and neither is material to this litigation.  A third, "Equitable Financial," is listed as holding a $45,170.00 claim arising June 10, 1996, secured by real property described on that schedule D as "W½E½ of Gov't Lot 2, Sec. 23, T28N, R2W, B.M., Idaho County, Idaho."  Debtors there noted that this "property is vested in the name of Western Land Co." and that "Western Land Co. also grant[ed] a Deed of Trust to the prop[erty] to Equitable."  *Id.* at 11.[3]

---

[2]  The Court takes judicial notice of its files and records in order to fill gaps left by the evidence and the arguments of the parties.  *See* Fed. R. Evid. 201.  This includes notice of the pleadings and documents in this and a related adversary proceeding (cited as "Adv. Doc. No."), and also pleadings and documents in the underlying chapter 7 case ("Doc. No.").

[3]  As will be discussed further below, an issue exists as to the alleged secured claim of this creditor.  Trustee relies on a preliminary title commitment, Ex. 100, which asserts two deeds
(continued...)

MEMORANDUM OF DECISION - 3

The real property so mentioned, to wit:

The W½E½ of Government Lot 2, Section 23, Township 28 North,
Range 2 West, Boise Meridian, Idaho County, Idaho

(the "Property") is a 6.8 acre parcel of undeveloped ground abutting the Snake

River in the Hells Canyon area of Idaho.  As noted, it was not listed in Debtors'

schedule A as real property that they owned or in which they had an interest.

According to the evidence presented, the Property is located in the Hells

Canyon National Recreation Area, a rugged and remote, undeveloped and

federally-protected area.  The Snake River running through the HCNRA is

designated as a Wild and Scenic River, managed by the U.S. Forest Service, and

its use is strictly regulated.  The Property is one of a handful of privately owned

parcels along this stretch of the Snake River.

The Property is on the north (Idaho) side of the River, with Oregon to the

south.  The shape of the Property is an elongated rectangle, with the shorter leg

along the river and the longer leg extending north. The southern third, or so, of the

6.8 acres comprising the Property is relatively flat; the elevation rises steeply to

rocks and bluffs to the north.  There are (and can be) no structures or

---

[3] (...continued)
of trust exist in favor of "Equitable Financial Services."  One is allegedly dated January, 23, 2003
(and granted to Equitable Financial by Debtors) and another dated July 21, 2003 (granted by
Western Land Company).  Debtors' assertion in their schedule D of a *1996* granting of security is
unexplained, as is the confusion created by the dual deeds of trust to Equitable Financial.
Debtors were not called to testify, nor were any of the documents referred to in the preliminary
title commitment offered into evidence (other than a deed to Lamms, discussed *infra*).

MEMORANDUM OF DECISION - 4

improvements on the Property, and it may be used only for recreation.  The

Property is accessible solely from the river.  Boats can land on the westernmost

one-fourth or one-third of the riverbank; rocks and rapids prevent landing further

east unless water levels are high.[4]

In January, 2007, Trustee filed a motion to sell the Property under

§ 363(b)(1) and § 363(h).[5]  Doc. No. 43.  In that motion, Trustee alleged that

Debtors were the owners of the Property, and transferred the same (at a point in

time not identified in this motion) to Western Land Co.  Trustee further alleged

that Western Land Co. sold and transferred thirty-five 1/500th undivided interests

("UDI") in the Property to several different grantees, and that Western Land Co.

(later known as Ragtown Bar Corporation) owned the remaining 465/500ths.

Trustee characterized the relationship between Western Land Co. and the several

UDI transferees as "tenants in common."

Trustee's motion further alleged that he had received proposals to purchase

the Property for $150,000.00 to $155,000.00 if marketable title to 100% fee

ownership could be conveyed, and a proposal to purchase the estate's interests "as

is" for $80,000.00.  *Id.* at 4.

---

[4] *See generally* testimony of Charles Alan Lamm and Melba Lamm (the only witnesses
to testify who had actually been to the Property); Exs. 103, 104 (Google maps); Ex. 202 (Charles
Alan Lamm deposition) at attach. A-1 to A-3 (photos); Ex. 204 (plat map).

[5] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11,
U.S. Code, §§ 101-1532.

MEMORANDUM OF DECISION - 5

At that point in time (*i.e.*, January, 2007), the record did not establish that Debtors' estate owned or that Trustee could sell the Property. Rather, the property of the estate, *see* § 541(a), included only Debtors' stock in Ragtown Bar Corporation. Doc. No. 1 at 5.[6] On May 31, 2007, Trustee commenced an adversary proceeding against Debtors and Ragtown Bar Corporation, Adv. No. 07-07027-TLM, seeking to establish that this corporation was the alter ego of Debtors, to pierce the corporate veil, and to obtain a declaration that the Property was owned by Debtors as of the date of their petition and, thus, became property of the bankruptcy estate under § 541(a). Judgment was entered for Trustee on stipulation in November, 2007. Ex. 101.

On December 30, 2007, Trustee commenced the instant adversary proceeding against Debtors, Ragtown Bar Corporation, all the known UDI transferees, Idaho County, and Equitable Financial. The cause of action was one to obtain approval of sale of the Property under § 363(h) and § 363(b)(1); to have "all liens" attach to the proceeds of sale; and to authorize division of the net proceeds of sale among the various owners pro rata. Adv. Doc. No. 1 at 7; Adv. Doc. No. 5 ("Complaint") at 7. Defaults were entered as to all defendants except

---

[6] Documents accessible on the Idaho Secretary of State's website reflect that Western Land Co. was incorporated in 1994, and its name was changed to Ragtown Bar Corporation in January, 2005.

MEMORANDUM OF DECISION - 6

two: Charles Roy Lamm and Melba Lamm.[7]  Defendant asserted that her rights in

and to the Property stemmed from a warranty deed dated July 13, 1994, from

Western Land Co. to the Lamms.  *See* Ex. 101 (hereafter the "Warranty Deed"),

Ex. 200 (duplicate); *see also* Adv. Doc. No. 6-1.

The Warranty Deed conveys an undivided one-five hundredth (1/500th)

interest "which is held in common, however, and is an undivided interest."  The

Warranty Deed prohibits any further division of the 1/500th interest conveyed, and

also contains the following language:

> Such interest is given with the following restrictive covenants herein
> contained.  No buildings shall be erected upon said property by the
> [grantees], no recreational vehicles shall be driven or parked upon said
> property by [grantees], and the [grantees] will become a member of the
> Hells Canyon Recreational Land Owners Association and agree to
> abide by all its regulations and rules.  The [grantees] will have a voting
> right in such association commensurate with their ownership of such
> real property.  Accordingly, the [grantees] shall have one vote.  If at
> any time the [grantees] become delinquent or in noncompliance with
> the rules and regulations of said association, [grantees] covenant and
> agree that they will deed and convey, assign and transfer any and all
> interest they have in the [Property] back to the [grantor].

*Id.*[8]

According to the evidence presented, the Property remains totally

---

[7]  An answer was first filed on February 6, 2008, by Defendant Melba Lamm, which
noted that Charles Roy Lamm was deceased, and that she was 77 years old.  Adv. Doc. No. 6 at 8.
The answer was filed only by Melba Lamm and, as noted earlier, she is referred to in this
Decision as the "Defendant."

[8]  There was no evidence that the referenced "Association" had ever been formed, nor
that "rules and regulations" existed, nor that there were ever any "votes" of its members.

MEMORANDUM OF DECISION - 7

undeveloped, and the use and utility of the Property is purely recreational.

Testimony establishes that Defendant and her extended family have regularly used

the Property for camping, boating, fishing and outdoor activities since it was

acquired in 1994. Importantly, ownership of property on the Snake River in this

area gives the owners unfettered access to the river, notwithstanding that the U.S.

Forest Service otherwise strictly limits the number of boats that can be on the river

in a given day. *See*, *e.g.*, Exs. 105, 106 (U.S.F.S. 2008 and 2009 Wild and Scenic

River Annual Visitor Use Reports).[9]

As mentioned, all defendants – except Mrs. Lamm – have defaulted.[10]

Long after the Complaint and the filing of Defendant's first answer, Adv. Doc.

No. 6, filed Feb. 6, 2008, Trustee amended his complaint to assert two causes of

action: first, a claim for partition of the Property under Idaho Code § 6-501, *et*

---

[9]  The parties agree that the ability to use the Snake River in this rugged, remote and strictly controlled part of Idaho is the primary value of ownership of the Property. One can reasonably assume, from the evidence, that Debtors created the UDI structure, and in all likelihood the corporate vehicle initially known as Western Land Co., for the purpose of conveying the 1/500ths ownership to those wishing such access. The transfers would presumptively be in return for value received by Debtors. No evidence was presented as to what was paid Debtors or their corporation in return for the transfer of 34 of the UDI interests and, as to Defendant, the Warranty Deed merely recites "good and valuable consideration." Defendant testified, however, that the Lamms "traded" a Hawaiian vacation (allowing Debtors to stay at the Lamms' home in Hawaii, and providing Debtors with transportation on the islands, most of their food, and a chartered fishing trip) in return for the UDI.

[10]  Defaults have been entered. *See* Fed. R. Bankr. P. 7055, incorporating Fed. R. Civ. P. 55(a). No default *judgments* have been entered. *Id.* (incorporating Fed. R. Civ. P. 55(b)).

MEMORANDUM OF DECISION - 8

*seq.*[11] and, second and alternatively, sale under § 363(h).  Adv. Doc. No. 65, filed

Feb. 11, 2009 (the "Amended Complaint").[12]  Defendant filed an amended answer

and, following unsuccessful attempts of the parties to negotiate a settlement, trial

was held.

## DISCUSSION AND DISPOSITION

Given the judgment entered in Adv. No. 07-07027-TLM, Ex. 101, the

estate – and not Ragtown Bar Corporation – has ownership interests in the

property.[13]  However, the evidence establishes that this is not a 100% fee interest.

Rather, the estate owns a 465/500th undivided interest in the Property, with the

remaining 35/500 UDIs owned by several individuals and entities.

The relief sought in this action would not eliminate any of the UDI holders'

---

[11]  Idaho Code § 6-501 provides:

**When partition may be had.**  When several cotenants hold and are in possession
of real property as parceners, joint tenants or tenants in common, in which one (1)
or more of them have an estate of inheritance, or for life or lives, or for years, an
action may be brought by one (1) or more of such persons for a partition thereof,
according to the respective rights of the persons interested therein, and for a sale of
such property, or a part thereof, if it appears that a partition can not be made without
great prejudice to the owners.

[12]  How relief on the Amended Complaint against Defendant would or could be
reconciled with relief against all the other, defaulted defendants who had been served only the
earlier Complaint is an open issue but, ultimately, one the Court need not resolve.

[13]  Though not specifically stated in that judgment, the Court determines that the
judgment necessarily provides that the interest of Debtors, and thus the estate, existed as of the
filing of the petition for relief.  *See, e.g.*, 541(a) (addressing interests "as of the commencement of
the case").  This satisfies the first requisite of § 363(h), which allows a trustee to seek authority to
sell both the estate's interest and that of co-owners "in property in which the debtor had, *at the
time of the commencement of the case*, an undivided interest[.]"

MEMORANDUM OF DECISION - 9

interests in the property.  Instead, Trustee seeks only authority to sell the whole of the Property under § 363(h), and to then distribute the "net" proceeds of sale to all the UDI holders *pro rata*.[14]  Defendant, alone of the 35 UDIs, disputes that Trustee has established the right to do so.

### A.    Section 363(h)

The Ninth Circuit in *Marino v. Xuereb (In re Marino)*, 794 F.2d 1367 (9th Cir. 1986), summarized:

> Section 363 governs the rights of parties in liquidating the bankruptcy estate's fractional interest in property owned jointly by the bankruptcy estate and the nonbankrupt co-owners.  Subsection (h) permits the trustee, subject to limitations not relevant to the case at bar, to effect a forced sale of property in which the debtor and the other co-owners have an undivided interest.  Subsection (I) permits a co-owner of the property to purchase it from the trustee at the same price as the trustee otherwise intended to sell it to the third party.  Subsection (j) directs the trustee to distribute the net proceeds of a sale made pursuant to subsections (g) and (h) to the property's co-owners, after the payment of costs and expenses, according to the interests of all the co-owners.  We interpret this subsection to provide that, at least absent exceptional circumstances, the costs of sales transacted pursuant to subsections (g) or (h) are to be allocated pro rata among the co-owners of the property sold.

*Id.* at 1369 (citation omitted).[15]

---

[14]  Both the Complaint and the Amended Complaint are consistent in this regard.

[15]  The relevant provisions of § 363 state as follows:

**(h)** Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if –

(continued...)

MEMORANDUM OF DECISION - 10

Trustee was correct in bringing this matter as an adversary proceeding, instead of attempting to advance the § 363(h) issues through the motion filed in the chapter 7 case. *See* Fed. R. Bankr. P. 7001(a)(3) (requiring an adversary proceeding to obtain approval of a sale under § 363(h)). The issues now presented revolve around whether Trustee has established a right to relief.[16]

------------------------------------

[15] (...continued)

> **(1)** partition in kind of such property among the estate and such co-owners is impracticable;

> **(2)** sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

> **(3)** the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

> **(4)** such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

**(i)** Before the consummation of a sale of property to which subsection (g) or (h) of this section applies, or of property of the estate that was community property of the debtor and the debtor's spouse immediately before the commencement of the case, the debtor's spouse, or a co-owner of such property, as the case may be, may purchase such property at the price at which such sale is to be consummated.

**(j)** After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.

[16]  One question is whether full and complete relief under § 363(h) through (j) could be entered in this adversary proceeding because Trustee is not presently proposing an actual sale but, instead, seeks authority to proceed with "marketing," soliciting a preliminary purchase proposal
(continued...)

MEMORANDUM OF DECISION - 11

### 1.    The Court has jurisdiction

Much of Defendant's opposition to Trustee's Amended Complaint revolves around her contention that there is no "subject matter jurisdiction" and the complaint must thus fail.  Defendant's approach to the issue is misdirected.[17]

The Court's jurisdiction exists here under 28 U.S.C. § 1334(b) and (e).[18]  The matter is a core proceeding.  28 U.S.C. § 157(b)(2)(A), (N), (O).  The Court can proceed to hear and enter a final ruling upon the matter.  28 U.S.C. § 157(b)(1).  *See generally Marshall v. Stern (In re Marshall)*, 600 F.3d 1037, 1049-55 (9th Cir. 2010) (addressing at length the subject of bankruptcy court jurisdiction).

---

[16] (...continued)
or offer, and holding an "auction sale" of the Property thereafter.  Given its ultimate conclusions herein, the Court need not reach such question.

[17]  At its core, Defendant's argument is that because she feels Trustee cannot prove a right to relief under § 363(b) and (h) – or, as she says, because those sections "do not apply" – there is no jurisdiction.  *See, e.g.*, Adv. Doc. Nos. 66 (answer) at 3, 98 (brief) at 7-11.  This confuses the issue of the Court's jurisdiction to hear a matter with the issue of whether a plaintiff can prove the substantive requirements for relief.

[18]  Sections 1334(b) and (e) provide in pertinent part:

**(b)** Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
. . .
**(e)** The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction –

      **(1)** of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate[.]

MEMORANDUM OF DECISION - 12

### 2. The fractional interests in the Property are held as tenants in common.

Defendant makes two arguments in connection with the nature of the interests held in the Property. Both relate to her argument that Trustee cannot establish the required element, found in § 363(h), that the interest of the debtor and co-owner at the time of the commencement of the case be "an undivided interest as a tenant in common, joint tenant, or tenant by the entirety."[19]

First, Defendant contends that the existence of covenants in the Warranty Deed, and the reference therein to the "Hells Canyon Recreational Land Owners Association," require the conclusion that the Debtors and the other UDI holders created a partnership, joint venture, or some other ownership vehicle which was not a "tenancy in common." The Court disagrees. There was no persuasive evidence presented of the existence of any "entity" such as a partnership or joint venture that owned the Property. To the contrary, the Warranty Deed itself indicates that the real property interest conveyed to Defendant in the Property is "held in common . . . and is an undivided interest." Ex. 102.[20]

---

[19]  The parties agree that joint tenancy and tenancy by the entirety are irrelevant to the present case.

[20]  Contrast the present situation, where the estate holds a 465/500ths UDI and specified individuals hold the other 35/500ths UDIs, with a situation where an entity (*e.g.*, a partnership) owns 100% of the property with the estate and individuals as partners holding similarly-sized ownership interests in the entity. In the latter circumstance, § 363(h) is unavailable. *See* 3 COLLIER ON BANKRUPTCY ¶ 363.08[3] at 363-60 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.) ("Courts uniformly reject trustees' efforts to use section 363(h) to sell property
(continued...)

MEMORANDUM OF DECISION - 13

Idaho Code § 55-104 indicates that property is held in common unless held by a partnership.[21]  And Idaho Code § 55-508 provides that co-owned interests are presumed to be held "in common" unless a contrary indication appears from the instrument of transfer.[22]  Both provisions provide further support for the conclusion, consistent with the transfer documents themselves, that the interests of the Debtors and thus their estate (465/500ths UDI), the Defendant (1/500ths UDI), and the other defendants (collectively 34/500ths UDI) are held as tenants in common.

Defendant's second and related argument is that the covenants in the Warranty Deed, such as prohibition of buildings and recreational vehicles, and the reference to the "rules and regulations" of the alleged "Association" manifest such

---

[20] (...continued)
owned by a partnership in which the debtor is a partner.  ... [T]enancy in a partnership is not one of the listed forms of ownership to which the section applies.")  Defendant did not establish that alternative proposition, *i.e.*, that the Property was owned by Ragtown Bar Corporation (or any other entity) and that she held a 1/500th interest in the entity.

[21]  Idaho Code § 55-104 states:

**Interests in common.**  Every interest created in favor of several persons in their own right is an interest in common, unless acquired by them in partnership, for partnership purposes, or unless declared in its creation to be a joint interest, or unless acquired as community property.

[22]  Idaho Code § 55-508 states:

**Cointerests deemed to be in common.**  Every interest in real estate granted or devised to two (2) or more persons, other than executors or trustees, as such constitutes a tenancy in common, unless expressly declared in the grant or devise to be otherwise.

MEMORANDUM OF DECISION - 14

a control and restriction as to negate the idea that Defendant held her UDI as a
tenant in common.  Again, the argument was not sustained.

No authority was provided to support the proposition that covenants or
similar restrictions on a tenant in common interest would operate to change such
interest into some other (and Defendant did not identify what other) property
interest.  During argument, Defendant conceded that a house might be owned by
two parties as tenants in common, even though such a property and its owners
might also be subject to covenants in a deed or in recorded covenants, conditions
and restrictions ("CCRs") and subject to a "homeowners' association," all of
which would, of course, limit the use of the property by the tenants in common.
Defendant never established that the nature of the tenant in common interest held
in such a property would be rendered or converted into something else by virtue of
such restrictions.[23]

The Court concludes Debtors and Defendant, at the time of the
commencement of the case, held their respective undivided interests in the
Property as tenants in common.

### 3.    Trustee failed to prove two of the four elements of § 363(h)

Despite Defendant's failure to sustain her contentions and objections to the

---

[23]  When pressed to explain what the "something else" might be, Defendant had no
answer.

MEMORANDUM OF DECISION - 15

Court's "jurisdiction" or regarding the nature of the co-owned interest, the Court concludes that relief cannot be entered for Trustee.

A plaintiff trustee carries the burden of showing that a sale under § 363(h) is proper. A sale pursuant to § 363(h) is permissible only if the four conditions set forth in § 363(h)(1) through (4) are met. *Yoppolo v. Schwenker (In re Ziegler)*, 396 B.R. 1, 3 (Bankr. N.D. Ohio 2008). *Accord Schwaber v. Reed (In re Reed)*, 940 F.2d 1317, 1323 n. 8 (9th Cir. 1991) (recognizing that these four conditions would need to be established in order for trustee to sell the entire property rather than just the estate's joint tenant interest).[24]

The parties agree § 363(h)(4) is not implicated. They dispute the other three requisites.

###     a.       Whether partition of the Property is impracticable; § 363(h)(1)

Even though the Property is relatively large (6.8 acres) and is bare ground, and even though only a small portion of the Property (*i.e.*, 35/500ths) is owned by non-Debtor co-owners, facts which might suggest a possible ability to partition, the Court concludes partition of the Property is not practicable. *See* § 363(h)(1).

> [P]racticable is not a synonym for possible; nor is it a synonym for practical. Its meaning falls between the two concepts of possibility and practicality, and incorporates both ideas – something that is not only

---

[24]   The four conditions in § 363(h) are stated in the conjunctive, meaning that all four must be affirmatively met or found inapplicable. *See In re Roots Rents, Inc.*, 420 B.R. 28, 36 (Bankr. D. Idaho 2009) (citing *In re Jayo*, 06.3 I.B.C.R. 71, 74, 2006 WL 2433451 at *5 (Bankr. D. Idaho 2006) on principles of conjunctive and disjunctive construction).

MEMORANDUM OF DECISION - 16

possible, but also feasible and sensible.

*56 Assoc. v. Diorio*, 381 B.R. 431, 436 (D.R.I. 2008).

Partition assumes that a property may be physically divided in order that all the co-owners could each be given an appropriate portion of the whole. But the physical configuration and the nature of use of the Property makes the concept of a physical partition here impossible.

Recall, the value of the ownership interests of all UDI holders is based on access to the Snake River, and the concomitant rights to travel on the river free of the permitting restrictions otherwise applicable. The physical use of the Property is similar, focusing on accessing the Property from the Snake River and camping on the lower one-third. A partitioned parcel located in the rocky bluffs on the north end of the Property would not only be inaccessible (absent easement from owners of parcels on the river), it would effectively be worthless because of the lack of rights that are provided only owners of riverfront property in the HCNRA. To be successfully partitioned, the UDI holders would have to be assured of access to the river, and a parcel sufficiently large so as to land a boat and enjoy the use of their parcel without interfering with others.

Imagining 500 separate, pencil-thin parcels running north and south from the Snake River illustrates the impracticability of partition. And, even acknowledging that 465/500th are held by one co-owner (the estate) does little to change the analysis. The evidence presented does not establish that partition into

MEMORANDUM OF DECISION - 17

even as few as 32 to 36 parcels with river frontage and access is practicable.[25]

Defendant suggests, *via* testimony and Ex. 204, that a partition of 35/500ths into *one* parcel of approximately .5 acre in the south-west corner of the Property with the other 465/500th UDIs constituting a single parcel on the remaining 6.3 acres would be practicable.[26]   However, the proposal is materially flawed. Section 363 protects and requires consideration of the interests of *all* and *each* of the non-Debtor fractional interests.  While it might make sense for the holders of the 35 non-Debtor UDI interests to aggregate their interests so as to facilitate a resolution, the evidence does not indicate that they have so joined or merged. Defendant appears in defense of her own UDI interest alone, and her attorney speaks only for her.  Thus the suggestion that there is a practicable "two-parcel" partition solution cannot be adopted by the Court.

The Trustee has established that partition is impracticable and has satisfied the first condition.  *See* § 363(h)(1).

---

[25]   In the abstract, a property of 6.8 acres might be partitionable into 36 parcels of roughly .2 acres each.  Of the 35/500 non-estate UDI interests, two UDI holders hold 2/500ths interests each, and one UDI holder has a 3/500ths interest, leaving 28 holders of 1/500th UDIs. *See* Ex. 100 at 6-7.  This suggests that a physical partition might only need to accommodate 32 parcels (of appropriate sizes).  However, the evidence does not allow for a conclusion that a configuration is possible which would provide each such parcel with its own riverfront ownership and river access.

[26]   *See also* Adv. Doc. Nos. 98 at 20 (briefing suggesting same); 98-1 (exhibit to brief showing parcels); 100-1 (revised exhibit to brief, identical to Ex. 204).

MEMORANDUM OF DECISION - 18

           **b.**    **Whether sale of the estate's undivided interest
would realize significantly less than sale of the
Property free and clear of co-owners' interests;
§ 363(h)(2)**

This factor is viewed by the Trustee as simple, and as satisfied by the

testimony, relatively nonspecific but nonetheless unchallenged, that a sale of the

estate's interest alone might garner $80,000 and sale of the entire Property free of

co-owners' interests would bring $150,000 or $155,000.  It is not so simple.

The Trustee relies on cases that find it "generally accepted" that a sale of an

estate's undivided interest will generate substantially less than a sale of the entire

property free of co-owners' interests.  *See*, *e.g.*, *Zeigler*, 396 B.R. at 4;[27] *Maxwell*

*v. Barounis (In re Swiontek)*, 376 B.R. 851, 866 (Bankr. N.D. Ill. 2007).[28]

Though it may be, as some argue, self-evident that a sale of a partial

interest in a property is "worth less" than a sale of the whole of the property, one

wonders if Congress meant for this element of § 363(h) to be so easily and

---

[27]  The Court notes, though, that while the court in *Zeigler* makes this observation, it
actually held that "*without evidence to the contrary* from the Defendants, the Court finds that the
trustee has met his burden under § 363(h)(2)."  *Id.* (emphasis added).  Evidence is critical and, at
trial here, it included not just what Defendant submitted but what the Trustee himself placed into
the record regarding the offers.

[28]  Some of the cases relied on by the Trustee actually take "judicial notice" of this
proposition.  *See*, *e.g.*, *Swiontek*, 376 B.R. at 866; *Maiona v. Vassilowitch (In re Vassilowitch)*, 72
B.R. 803, 807-08 (Bankr. D. Mass. 1987).  This Court, however, seriously questions whether
such a proposition is an "adjudicative fact" within the proper reach of Fed. R. Evid. 201(a) and
(b).  *Accord*, Hon. Barry Russell, Bankruptcy Evidence Manual § 201:10 ("Judicial Notice
Improperly Taken") at 92-93 (West 2010 ed.) (criticizing, *inter alia*, *Vassilowitch*).  To the extent
the Trustee asks this Court to take judicial notice in order to meet this element, the Court denies
the request.

MEMORANDUM OF DECISION - 19

reflexively established in every case.  What the Code appears to require is a consideration of two alternatives, using the evidence presented: first, what a sale of the whole of the co-owned property might bring – including the impact of such a sale on the realizable interest of the estate in such property – and, second, what a sale of the estate's undivided interest alone might bring.[29]

The evidence presented at trial regarding the value of the Property or of the estate's interest in it was vague.  Trustee was the only witness to speak to value or potential sale of either the whole of the Property or of the estate's UDI therein.[30] The Trustee merely noted, consistent with his pleading contentions, that preliminary offers of $150,000 to $155,000 for a 100% fee interest in the Property had been made, as had an offer of $80,000 for whatever interest the estate held in the Property.  No details as to these offers was provided.[31]

Trustee did note that the Property was encumbered by unpaid real property

---

[29]  The Court appreciates that some courts appear to undertake this sort of analysis in connection with § 363(h)(3) rather than § 363(h)(2), though that does not negate its utility or importance.

[30]  Trustee called a real estate broker, but the testimony of this witness was limited to the propositions that (1) generally speaking, sale of undivided interests brings less than sale of a 100% fee interest and that, at times, it is difficult to find potential buyers for UDIs at all, and (2) partition of the Property was not practicable.  The broker provided no helpful testimony regarding the actual market value of the Property or the market value of interests therein.

[31]  The same characterization of the offers is found in the January, 2008, Complaint and in the January, 2007, sale motion in the chapter 7 case.  Nothing in Trustee's trial testimony indicated that the "offers" he described were anything other than these expressions of potential interest from several years ago.  Nothing was provided to the question of the value of the Property in 2010, or to the question of any current interest in purchasing the Property or purchasing the estate's interest in it.  Trustee did, however, indicate a desire to "market" the Property following a resolution of the trial.

MEMORANDUM OF DECISION - 20

taxes, which constitute a lien, indicating that the taxes were in the amount of $10,388 for the period of 2003 to present.  Trustee also indicated that the "payoff" to Equitable Financial (or its successor) had been quoted to him at $67,244.58 as of July 15, 2009, with interest accruing thereon at $9.72 *per diem*.[32]

Assuming that the real estate taxes ($10,388) and the Equitable Financial secured claim (approximately $70,870 when including interest from the payoff quote date to present) encumber the entire Property and the interests of all the UDI holders, the net value of the Property if sold for $150,000 would be approximately $68,742.[33]  This is, of course, before consideration of the costs of sale.  If one assumes for discussion purposes that costs of sale might run 8% of the $150,000 purchase price (*i.e.*, $12,000), the net proceeds would be $56,742.

The estate's interest in the proceeds of sale of the entirety of the Property is based on the extent of its undivided interest.  *See Marino*, 794 F.2d at 1369 (discussing § 363(j) and distribution of proceeds after attributing costs of sale).

---

[32]  Trustee never cogently explained whether the Property was encumbered by two deeds of trust or only by one, though the payoff quoted was evidently just for one.  Trustee admitted he had "no idea" about the "other" deed of trust.  He also testified he had no knowledge of, and he presented no other evidence regarding, any of the actual documents of record, relying instead solely on Ex. 100, the "preliminary title commitment" of August, 2006.  Apparently such analysis, and evaluation of how the actual sale would be conducted and the proceeds divided among co-owners would, like the marketing, await some future date.

[33]  Idaho County and Equitable Financial are also defaulted defendants.  But the Complaint asserts that "all liens" would attach to the proceeds of sale and be paid.  The figures used in this discussion assume not only accuracy in what was suggested in testimony about the nature of these two lien claims, and that they would be paid from the proceeds before dividing the balance of the proceeds among the UDI holders, but also that there are no other encumbrances against the Property.

MEMORANDUM OF DECISION - 21

The estate's interest in the Property here is 93% (465 ÷ 500) or approximately $52,770 of the $56,742 net proceeds.

Trustee's testimony, consistent with his allegations in the 2007 motion and in the original and amended adversary complaints, is that he received an offer of $80,000 for sale of just the estate's interest in the Property "as is."[34]  This would be *more* than the realizable recovery on the estate's 93% interest were the Property sold as a whole, liens and costs of sale satisfied, and the net proceeds distributed as required by the Code.

The evidence does not allow the Court to speak with much confidence about the continued existence or viability of such an offer from 2007 or earlier. But on what the parties have presented, the element of § 363(h)(2) is not met.

### c. Whether the benefit to the estate of a free and clear sale outweighs the detriment to the co-owners; § 363(h)(3)

Trustee is interested in realizing funds from the sale of the estate's interest in the Property in order to pay those funds to creditors.  That is his charge.  *See* § 704(a).  But a sale free and clear takes the interests of the co-owners – interests that here relate primarily if not solely to the right of Snake River access – and

---

[34]  The Court was provided nothing to suggest that Trustee's use of the term "as is" meant anything other than its usual connotation in such situations – sale of the estate's interest in the Property subject to all other interests and liens of record.  Thus the $80,000 suggested price would not be reduced by the Equitable Financial secured claim or the tax lien.  Further, "costs of sale" would be effectively eliminated, as Trustee could convey, on Court approval, the interest to the buyer by a quitclaim or trustee's deed.

MEMORANDUM OF DECISION - 22

treats them as merely economic interests in the market value of the Property.
Using the foregoing analysis of a possible free and clear sale at $150,000,
generating proceeds net of taxes, liens and closing costs of $56,742, the estate
would recover $52,770, leaving a total of $3,972 for the other co-owners, or
$113.49 per 1/500ths interest.

Trustee, as noted earlier, would stand to recover *less* in this process than he
would if he sold only the estate's interest "as is." And the other co-owners would
stand to receive a *de minimis* distribution. "[I]f the trustee would receive little or
no money from a sale due to liens or other encumbrances on the property, then the
minimal benefit to the estate may be outweighed by the detriment to the co-
owners." *Ziegler*, 396 B.R. at 4 (citing *Matter of Ray*, 73 B.R. 544 (Bankr. M.D.
Ga. 1987)).

The Trustee has failed to establish, as required by § 363(h)(3), that the
benefit to the estate from a sale of the whole of the Property free of the interests of
the co-owners outweighs the detriment to the co-owners from such a sale. This is
not only based on the unique nature of the Property and its use by all the co-
owners, but also upon the Trustee's testimony about the expression of interest in
the purchase of the estate's interest alone.

The Court therefore concludes that the Trustee has failed to meet his burden
to establish two relevant, required conditions of § 363(h), and relief may not be
entered for him on the § 363(h) cause of action in the amended complaint.

MEMORANDUM OF DECISION - 23

### B.    Partition under Idaho Code § 6-501

As noted, the Complaint sounded only under § 363(h).  The Amended

Complaint added a cause of action for partition under Idaho law.   Adv. Doc. No.

65 at 7-8.[35]  The Trustee continues to assert, under this cause, that partition is

impracticable, just as he did under § 363(h)(1).  Briefing suggests that the

additional cause was pleaded in the event the Court rejected that contention, and

decided to order partition, because in the Trustee's view state law should direct the

process of partition if so ordered.  Adv. Doc. No. 95 at 10-11.

Because the Court has found that partition is impracticable and has

concluded that relief under § 363(h) was not established on the evidence presented

at trial, no relief can be entered on this cause of action.

## CONCLUSION

The factual situation is unique and certain of the issues presented quite

challenging.  Still, at end, resolution of any case requires a determination of

whether the plaintiff has carried the burden of proof on the statutory and case law

elements of the causes pleaded.  Here, the plaintiff did not do so.

Notwithstanding the default under Fed. R. Civ. P. 55 as to numerous

---

[35]   The caption of that cause of action appears to suggest that it is brought against only
Defendant, and not all defendants and, as previously noted, the Amended Complaint was served
only on Defendant (through ECF service on her counsel).  However, the allegations of this cause
speak to "all of the owners."  Further, the Trustee has not contended that a single 1/500th interest
be partitioned to Defendant under this cause nor supported the viability of such an approach in
light of § 363(h).

MEMORANDUM OF DECISION - 24

defendants, the opposition raised by Defendant put Trustee to his proof.  Given the

foregoing findings and conclusions upon such proof, judgment will be entered in

favor of Defendant, dismissing the Amended Complaint as against her.  Under the

circumstances, and given the evidence and the foregoing discussion, the Court also

concludes that it will not be able to enter any default judgment(s) as against the

defaulted defendants.[36]  The Complaint as to such defendants will likewise be

dismissed.[37]

DATED:  July 23, 2010



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[36]  *See* Fed. R. Bankr. P. 7055 (incorporating Fed. R. Civ. P. 55(b)(2) (allowing court to conduct hearings and take evidence as necessary to determine propriety of entry of judgment notwithstanding a defendant's default).  The trial here has, coincidentally perhaps, provided the Court with the evidence that Rule 55(b)(2) contemplates.

[37]  The proper reference here would appear to be to the Complaint because the Amended Complaint was served only on Mrs. Lamm, *see* note 35 *supra*, and the Complaint was served on the balance of the defendants.

MEMORANDUM OF DECISION - 25